1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7              **DISTRICT OF NEVADA**
8
9    TAM CONG NGUYEN,
10          Petitioner,                    Case No. 2:04-CV-00109-RCJ-(RJJ)
11   vs.                                   **ORDER**
12   JAMES SCHOMIG, et al.,
13          Respondents.
14
15          Before the Court are Tam Cong Nguyen's (Tam) Amended Petition for a Writ of
16   Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#25), Respondents' Answer (#26) and Response
17   (#43), and Tam's Replies (#28, #46).  The Court denies the Amended Petition (#25).
18          The basic facts of this case are not in dispute.  Tam suspected that his wife, Tammy
19   Nguyen (Tammy), was carrying on an affair with a co-worker, Dennis Vanduser.  Tammy and
20   Vanduser worked at the Excalibur Hotel-Casino in Las Vegas.  On March 16, 1998, Tam confronted
21   the two in the employee parking lot.  The result was a bloody mouth and a ban from the property for
22   Tam.  Then, on April 5, 1998, Tam returned to the Excalibur, armed with a .357 Magnum revolver.
23   Later, Tammy entered the van and drove to the front entrance, where she picked up Vanduser.
24   Instead of dropping Vanduser off at his home, Tammy drove to another place and stopped.
25   Vanduser began to touch and kiss Tammy.  Tam then introduced himself by firing a shot.  A scuffle
26   ensued, Tam fired more shots, and he killed Vanduser.
27          The state charged Tam with burglary while in possession of a firearm, for entering
28   the van with the intent to commit assault, battery, or a felony.  The state also charged Tam with first

1   degree murder with the use of a deadly weapon, for killing Vanduser while perpetrating a burglary

2   or after lying in wait.  Tam offered several explanations for his behavior:  He was extremely

3   emotionally disturbed because his wife was having an affair, the thought that Tammy and Vanduser

4   were about to have sexual intercourse in the van provoked him to the point of killing Vanduser, or

5   he acted in self defense.  The jury agreed with the prosecution on the murder charge but could not

6   come to a verdict on the burglary charge.  Tam received a sentence of life imprisonment with the

7   possibility of parole after twenty (20) years for the murder charge, and an equal, consecutive

8   sentence for the deadly-weapon enhancement.  The trial court dismissed the burglary charge.  Ex.

9   D.[1]  The Nevada Supreme Court affirmed on direct appeal.  Ex. F.  Tam then filed his first state

10  habeas corpus petition.  Ex. H.  The district court denied that petition.  Ex. J.  Tam appealed, and the

11  Nevada Supreme Court affirmed.  Ex. L.  Tam then filed in quick succession a motion to correct or

12  vacate an illegal sentence, Ex. M, a second state habeas corpus petition, Ex. P, and a third state

13  habeas corpus petition, Ex. S.  The state district court denied the illegal-sentence motion.  Ex. N.

14  The state district court denied the second and third state habeas corpus petitions as untimely and

15  successive.  Exs. Q, T.  The Nevada Supreme Court affirmed.  Ex. V; Opposition (#16), attached

16  exhibit.

17         "A federal court may grant a state habeas petitioner relief for a claim that was

18  adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was

19  contrary to, or involved an unreasonable application of, clearly established Federal law, as

20  determined by the Supreme Court of the United States,'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15

21  (2003) (quoting  28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision

22  that was based on an unreasonable determination of the facts in light of the evidence presented in

23  the State court proceeding," 28 U.S.C. § 2254(d)(2).

24         A state court's decision is "contrary to" our clearly established law if it "applies a
    rule that contradicts the governing law set forth in our cases" or if it "confronts a set

25         of facts that are materially indistinguishable from a decision of this Court and
    nevertheless arrives at a result different from our precedent." A state court's decision

26         is not "contrary to . . . clearly established Federal law" simply because the court did

27

28        [1]Unless stated otherwise, exhibits are attached to Respondents' Motion to Dismiss (#11).

1    not cite our opinions.  We have held that a state court need not even be aware of our
2    precedents, "so long as neither the reasoning nor the result of the state-court decision
     contradicts them."

3   Id. at 15-16.  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court

4   may not issue the writ simply because that court concludes in its independent judgment that the

5   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

6   Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76

7   (2003) (internal quotations omitted).

8           The petitioner bears the burden of proving by a preponderance of the evidence that he

9   is entitled to habeas relief.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004), cert. dismissed,

10  ___ U.S. ___, 126 S. Ct. 410 (2005).

11          In Ground One, Tam claims that his trial counsels provided ineffective assistance.

12  "[T]he right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson,

13  397 U.S. 759, 771 & n.14 (1970).  A petitioner claiming ineffective assistance of counsel must

14  demonstrate (1) that the defense attorney's representation "fell below an objective standard of

15  reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's

16  deficient performance prejudiced the defendant such that "there is a reasonable probability that, but

17  for counsel's unprofessional errors, the result of the proceeding would have been different," id. at

18  694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the

19  inquiry in the same order or even to address both components of the inquiry if the defendant makes

20  an insufficient showing on one."  Id. at 697.

21          Strickland expressly declines to articulate specific guidelines for attorney

22  performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of

23  interest, the duty to advocate the defendant's cause, and the duty to communicate with the client

24  over the course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's

25  duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney

26  performance. . . .  Any such set of rules would interfere with the constitutionally protected

27  independence of counsel and restrict the wide latitude counsel must have in making tactical

28  decisions."  Id. at 688-89.

-3-

1    Review of an attorney's performance must be "highly deferential," and must adopt

2    counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of

3    hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that

4    counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

5    defendant must overcome the presumption that, under the circumstances, the challenged action

6    'might be considered sound trial strategy.'"  Id. (citation omitted).

7    The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

8    proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

9    Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

10   below an objective standard of reasonableness alone is insufficient to warrant a finding of

11   ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

12   prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

13   but for the attorney's challenged conduct, the result of the proceeding in question would have been

14   different.  Id. at 94.  "A reasonable probability is a probability sufficient to undermine confidence in

15   the outcome."  Id.

16   If a state court applies the principles of Strickland to a claim of ineffective assistance

17   of counsel in a proceeding before that court, the petitioner must show that the state court applied

18   Strickland in an objectively unreasonable manner to gain federal habeas corpus relief.  Woodford v.

19   Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

20   In the pre-trial proceedings and the trial, two attorneys represented Tam.  First, he

21   retained John Wawerna.  After a fee-payment dispute, the court allowed Wawerna to withdraw and

22   appointed Kedric Bassett, a deputy public defender.  Tam presents multiple claims of ineffective

23   assistance.  Many of them are duplicates, with only the attorney's identity differing.  The Court will

24   group these claims topically and not proceed through each one sequentially.

25   First and seventh, Tam claims that Wawerna and Bassett, respectively, failed to

26   move for the provision of an interpreter.  The Nevada Supreme Court noted that Tam himself had

27   said in the preliminary hearing that he did not need an interpreter.  Therefore, counsel had no reason

28

1   to think that Tam needed one.  Ex. L, p. 4.  <u>See also</u> Ex. B, p. 3.  This was a reasonable application

2   of <u>Strickland</u>.  28 U.S.C. § 2254(d)(1).  If Tam had changed his mind later, he needed only to ask.

3           Second, third, eighth, and tenth, Tam claims that Wawerna and Bassett failed to

4   make a proper motion for a psychiatric evaluation of Tam, and that Wawerna failed to move for a

5   competency hearing of Tam.  The Nevada Supreme Court held:

6           Appellant did not state what psychiatric condition he suffered from which rendered
        him incompetent or any facts known to his counsel which should have alerted them
7        that appellant may have been incompetent.  Appellant did not even allege that he was
        in fact incompetent.  Therefore, appellant failed to show that counsels' performance
8        fell below an objective standard of reasonableness, and the district court did not err
        in denying this claim.

9

10  Ex. L, p. 3.  A review of Tam's state habeas corpus petition bears this out.  Even his current

11  Amended Petition (#25) does not allege these facts.  Tam did not meet his burden of pleading and

12  proving his claims, and the Nevada Supreme Court applied <u>Strickland</u> reasonably.  28 U.S.C.

13  § 2254(d)(1).

14          Fourth, sixteenth, and seventeenth, Tam claims that Wawerna, Bassett, and the

15  public defender's investigator tried to coerce him into pleading guilty pursuant to an agreement.

16  The Nevada Supreme Court held:

17          This claim is without merit.  Appellant did not accept a plea agreement, therefore, he
        cannot show a reasonable probability that but for counsels' alleged error the result of
18        the trial would have been different.  Therefore, appellant failed to show that counsel
        was ineffective in this regard and the district court did not err in denying this claim.

19

20  Ex. L, p. 4.  This was a reasonable application of <u>Strickland</u>.

21          Fifth, Tam claims that Wawerna failed to file any pre-trial motions that were

22  beneficial to the defense.  The Nevada Supreme Court held that Tam had failed to allege what

23  motions Wawerna could have filed.  Ex. L, p. 4.  Because Tam has the burden of pleading and

24  proving his case, this was a reasonable application of <u>Strickland</u>.

25          Sixth, twelfth, and thirteenth, Tam claims that he asked Wawerna and Bassett for

26  copies of discovery and disclosures, but they did not give him anything other than crime scene

27  photographs and police descriptions of the seized evidence.  The Nevada Supreme Court found that

28  Tam had not alleged what else counsels should have provided, nor how the failure to provide that

1  evidence caused him prejudice.  Ex. L, pp. 3-4.  Even in the Amended Petition (#25), Tam does not

2  allege what else counsels could have provided.  The Nevada Supreme Court applied <u>Strickland</u>

3  reasonably.

4         Ninth, Tam claims that Bassett failed to review the disclosed police reports, which

5  would have corroborated Tam's suicidal talk before and after he killed Vanduser.  The Nevada

6  Supreme Court held:

> To the extent that this claim is supported by factual allegations, it is belied by the
> record.  The jury heard testimony refuting and corroborating these assertions.
> Appellant testified that he did not threaten to kill himself or his family after getting
> into a fist-fight with the decedent.  Appellant testified that he was so "distressed"
> over the possibility that his wife might be having an affair with the decedent, that he
> told her "why don't you go take a gun and shoot me.  Kill me.  Kill all my kids.  I
> can't live like this."  Appellant's son testified that when appellant returned home
> after the murder he was despondent, and stated while holding the gun used as the
> murder weapon, that there was "no reason for me to live anymore."  Appellant's son
> testified that he believed his father wanted to kill himself because of the murder, and
> that he took the gun away from appellant so that appellant could not shoot himself.
> Therefore, appellant failed to show that counsel was ineffective in this regard and the
> district court did not err in denying this claim.

14  Ex. L, p. 5.  Because the corroborating statements were presented to the jury, the Nevada Supreme

15  Court applied <u>Strickland</u> reasonably.

16         Eleventh, Tam claims that Bassett failed to interview any of the witnesses whose

17  names Tam provided.  Tam might have provided names to Bassett, but he did not provide any

18  names to the Court, nor did he provide any information about what these witnesses' testimonies

19  would be.  If Tam is referring to the same people mentioned in his ninth claim of ineffective

20  assistance, then this claim is redundant and meritless, because those people did testify.  Otherwise,

21  Tam has failed to allege any deficient performance by Bassett and prejudice to himself.

22         Fourteenth, Tam claims that Bassett failed to file a motion to hire an expert to get a

23  second opinion on Tam's state of mind.  The Nevada Supreme Court noted:

> Appellant failed to state what kind of expert should have been called and what that
> expert would have testified to.  Moreover, Dr. Daniel Lee, a psychologist,
> neuropsychologist, and forensic psychologist with extensive experience working with
> Vietnamese refugees, conducted a comprehensive psychological assessment and
> clinical in-depth interview of appellant.  Dr. Lee testified at trial that he believed that
> appellant was not in control of his actions when he shot the victim.  Therefore,
> appellant failed to show that counsel's performance fell below an objective standard
> of reasonableness or that he was prejudiced.  Accordingly, the district court did not
> err in denying this claim.

1   Ex. L, p. 6.  This was a reasonable application of <u>Strickland</u>.  Additionally, Dr. Lee's testimony was

2   favorable to Tam, and Dr. Lee's expertise could not have been more compatible with Tam's

3   situation.  It is hard to imagine how another expert could have contributed anything more.

4           Fifteenth, Tam claims that Bassett abandoned the potentially viable defense based

5   upon Tam's extreme motional distress or disturbance.  On this issue, the Nevada Supreme Court

6   held:

7           On direct appeal, this court determined that there was "clearly sufficient evidence" to
            establish that appellant acted with deliberation and premeditation, and that the
8           evidence establishing murder by lying in wait was "overwhelming" and provided "a
            distinct, valid basis for the general verdict of first-degree murder."  Further litigation
9           regarding this issue is barred by the doctrine of the law of the case.  Therefore,
            appellant failed to show that counsel was ineffective in this regard and the district
10          court did not err in denying this claim.

11  Ex. L, pp. 7-8 (footnotes omitted).  Additionally, the record belies this claim.  As noted above, Dr.

12  Daniel Lee testified that because of Tam's distressed emotional state, he was not in control of his

13  actions.  Ex. E, pp. 12-13.  Bassett did what Tam claims he should have done.

14          Eighteenth, Tam claims that Bassett failed to move for the dismissal of the charge of

15  burglary while in possession of a firearm.  Nineteenth, Tam claims that Bassett failed to move for a

16  continuance of the trial to investigate the burglary charge.  The Nevada Supreme Court held that

17  Tam suffered no prejudice because the jury did not find him guilty of burglary.  Ex. L, p. 7.[2]  This

18  was a reasonable application of <u>Strickland</u>.

19          Twentieth, Tam claims that Bassett was ineffective for urging Tam to waive his right

20  to be sentenced by the judge, from whom he might have received a lesser sentence.  Normally, the

21  jury sets the penalty for a person convicted of first-degree murder, but in non-capital cases the

22  parties may stipulate to waive the separate penalty hearing and to have the trial judge set the penalty.

23  Nev. Rev. Stat. § 175.552.  The Nevada Supreme Court held:

24          Thirteenth, appellant claimed that trial counsel was ineffective for advising appellant
            to waive the right to be sentenced by the court rather than the jury.  To the extent that
25          this claim is supported by the factual allegations, it is belied by the record.  Prior to
            the beginning of the trial, the district court had a lengthy and somewhat ardent
26          discussion with appellant as to whether, if convicted, he would waive the penalty

27  _____

28          [2]The district court ultimately dismissed the burglary charge.  Ex. D.

                                                    -7-

1            hearing and agree to be sentenced by the district court.  Appellant repeatedly

2            informed the court that he would not waive the penalty phase.  Therefore, appellant failed to show that counsel was ineffective in this regard and the district court did not

3            err in denying this claim.

4  Ex. L, pp. 8-9.  The Nevada Supreme Court appears to have held that Bassett's advice did not

5  amount to ineffective assistance of counsel, because Tam followed that advice.  This Court is not

6  prepared to call that a reasonable application of <u>Strickland</u>.

7          Regardless, Tam does not allege facts that could show that he suffered any prejudice

8  in the form of a heavier sentence from the jury than what he could have received from the judge.

9  Non-capital first-degree murder has three possible penalties:  (1) life imprisonment without the

10  possibility of parole, (2) life imprisonment with the possibility of parole after twenty (20) years, or

11  (3) a definite prison term of fifty (50) years with the possibility of parole after twenty (20) years.

12  Nev. Rev. Stat. § 200.030(4)(b).  The jury set the penalty at life imprisonment with the possibility of

13  parole after twenty (20) years.  Because the jury had found Tam guilty of using a deadly weapon to

14  murder Vanduser, by law Tam received an equal, consecutive sentence.  <u>See</u> Nev. Rev. Stat.

15  § 193.165.  Even if Tam had received consecutive fifty-year terms instead of consecutive life terms,

16  he would still be eligible for release from incarceration only after forty years at the earliest.  The

17  only difference is when the sentences would expire.  Tam's actual sentence expires when he expires.

18  The consecutive fifty-year terms would expire after seventy years at the earliest, if Tam is paroled

19  from his first term after twenty years.  Tam came to America in 1975 at age nineteen.  Ex. E, pp. 13-

20  14.  He was sentenced on January 6, 1999, with two hundred seventy-five days of credit for time

21  spent in jail.  Ex. D.  The consecutive fifty-year terms would expire at the earliest some time in

22  2068, when Tam would be around one hundred twelve years old.  Even if Bassett was wrong to urge

23  Tam to be sentenced by the jury, and even if the judge would have imposed the fifty-year terms

24  instead of the life terms, Tam would not have suffered any practical prejudice.  This claim is

25  without merit.

26          In Ground Two, Tam claims that appellate counsel was ineffective for not raising

27  extreme emotional disturbance as a ground on appeal.  Tam does not allege what appellate counsel

28  would have done.  As noted above, Tam did present evidence of extreme emotional disturbance to

1   the jury.  The jury still found him guilty of first-degree murder.  Questions of fact are the jury's right

2   and duty to decide.  Ewing's Lessee v. Burnet,  36 U.S. (11 Pet.) 41, 50-51 (1837).  Appellate

3   counsel had nothing to challenge.  Therefore, appellate counsel provided effective assistance.

4           In Ground Three, Tam claims that appellate counsel was ineffective for unspecified

5   reasons.  In Ground Five, Tam argues that the trial court erred in admitting prejudicial evidence of

6   other, unspecified wrong acts.  Each ground is actually nothing but a reference to pages 5A through

7   5J and pages 3 through 3C of his Amended Petition (#25).  However, in those pages he does not

8   even mention appellate counsel or other wrong acts.  Because Tam has failed to state the facts

9   supporting these grounds, the Court denies them.  Rule 2(c), Rules Governing Section 2254 Cases

10  in the United States District Courts.  See also Mayle v. Felix, 545 U.S. 644, ___, 125 S. Ct. 2562,

11  2569-70 (2005).

12          In Ground Seven, Tam claims that, at the preliminary hearing, the justice of the peace

13  failed to properly canvas or warn Tam that waiver of an interpreter at the preliminary hearing would

14  continue throughout the proceedings.  In state court, Tam raised this ground for the first time in his

15  third habeas corpus petition.  The Nevada Supreme Court held that that petition was untimely and

16  successive.  Opposition (#16), attached exhibit (citing Nev. Rev. Stat. §§ 34.726, 34.810).

17     Respondents argue that Ground Seven is procedurally defaulted.  A federal court will not

18  review a claim for habeas corpus relief if the decision of the state court regarding that claim rested

19  on a state-law ground that is independent of the federal question and adequate to support the

20  judgment.  Coleman v. Thompson, 501 U.S. 722, 730-31 (1991).

21          In all cases in which a state prisoner has defaulted his federal claims
            in state court pursuant to an independent and adequate state
22          procedural rule, federal habeas review of the claims is barred unless
            the prisoner can demonstrate cause for the default and actual prejudice
23          as a result of the alleged violation of federal law, or demonstrate that
            failure to consider the claims will result in a fundamental miscarriage
24          of justice.

25  Id. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The grounds for dismissal upon

26  which the Nevada Supreme Court relied in this case are adequate and independent state rules.  Vang

27  v. Nevada, 329 F.3d 1069, 1074 (9th Cir. 2003) (Nev. Rev. Stat. § 34.810); Loveland v. Hatcher,

28

1  231 F.3d 640 (9th Cir. 2000) (Nev. Rev. Stat. § 34.726); <u>Moran v. McDaniel</u>, 80 F.3d 1261 (9th Cir.
2  1996) (same).

3          To demonstrate cause to excuse a procedural default, the petitioner must "show that
4  some objective factor external to the defense impeded" his efforts to comply with the state
5  procedural rule.  <u>Murray</u>, 477 U.S. at 488 (emphasis added).  For cause to exist, the external
6  impediment must have prevented the petitioner from raising the claim.  <u>See</u> <u>McCleskey v. Zant</u>, 499
7  U.S. 467, 497 (1991).

8          Tam's response is to refer the Court to the equivalent ground that he raised in his
9  third state habeas corpus petition, Ex. S, pp. 7-7b, and to the ground in his first state habeas corpus
10 petition that he was denied his right to an interpreter, Ex. I, pp. 31-32.  Other than that, Tam makes
11 no attempt to show good cause and prejudice.  <u>See</u> Reply (#28), p. 6.  If Tam is trying to show that
12 he raised a similar ground in an earlier petition, then the attempt fails.  Tam's ground in his first
13 state habeas corpus petition that he was denied a right to an interpreter was itself procedurally
14 defaulted because he could have raised it on direct appeal but did not.  Ex. L, p. 10 (citing Nev. Rev.
15 Stat. § 34.810).  This Court dismissed its equivalent, Ground Four, as procedurally defaulted.  Order
16 (#24), pp. 5-6.  Because Ground Four is procedurally defaulted, it cannot serve as cause and
17 prejudice to excuse the procedural default of Ground Seven.  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S.
18 446 (2000).  The Court dismisses Ground Seven.

19         The other grounds in the Amended Petition (#25) have already been disposed.
20 Grounds Four, Six, and Ten were procedurally defaulted.  Tam dismissed Ground Eight as
21 unexhausted.

22         IT IS THEREFORE ORDERED that the Amended Petition for a Writ of Habeas
23 Corpus (#25) is **DENIED**.  The Clerk of the Court shall enter judgment accordingly.

24         DATED this 12th day of February, 2007.

25
26                                          _____
27                                          ROBERT C. JONES
                                            United States District Judge
28

-10-